## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| DAS NOBEL, Individually, and on behalf of all other similarly situated, | |
| **Plaintiff,** | Case No.: 1:24-cv-22751-BB |
| v. | CLASS ACTION |
| SOUTH FLORIDA STADIUM LLC D/B/A HARD ROCK STADIUM, CONFEDERACION SUDAMERICANA DE FUTBOL D/B/A CONMEBOL, CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL D/B/A CONCACAF, AND BEST CROWD MANAGEMENT, INC., | |
| **Defendants.** | |

## PLAINTIFF'S REPLY IN SUPPORT OF EXPEDITED MOTION FOR PROTECTIVE ORDER LIMITING COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

### I.   INTRODUCTION

In its Opposition to Plaintiff's Expedited Motion for Protective Order, [D.E. 20], (hereafter, "Opposition") South Florida Stadium LLC ("Defendant" or "SFS"), sets forth what might appear to be imminently reasonable communications to putative class members seeking a refund. If Defendant had accurately described its actual communications, perhaps Plaintiff Das Nobel ("Plaintiff") would not have found it necessary to request a Protective Order [D.E. 10], (hereafter, the "Motion"). But in fact, Defendant's communications to putative class members interfere with the proper functioning of this litigation for several reasons: 1) a reasonable class member would not understand the phrases "primary market ticket purchaser," "secondary market ticket purchaser," "face value" or maybe even "class action"; 2) a reasonable class member would not

know the face value of their ticket and Defendant does not clarify how face value can be determined; and 3) Defendant deceptively purports to allow putative class members to release the legal rights of other putative class members without their knowledge or any notice of pending litigation. Defendant's communications are exactly the type of communications that courts find to be abusive, misleading, confusing, or coercive.

Defendant argues that it sent the August 5, 2024, email for the "full measure of relief" to fewer than 150 primary market purchasers. However, this statement is untrue for multiple reasons. First, Plaintiff has learned that Defendant has sent other emails to certain *re-sale* ticket purchasers with a similarly problematic message as of today's filing date. *See* Exh. A, Aug. 30, 2024, email. Thus, Defendant's representations to this Court that it sent emails to "fewer than 150 primary market purchasers" is inaccurate.[1] It is quite possible that Defendant has actually sent emails to hundreds of ticket purchasers.[2] Second, Defendant glosses over the numerous public statements it made suggesting that the sole source of refunds is Ticketmaster.

Defendant also spills a lot of ink on arguments regarding arbitration, but Plaintiff will respond to those arguments if and when Defendant files a proper motion to compel arbitration. Nonetheless, it should be noted that while Defendant argues that the Ticketmaster arbitration clause applies to each and every class member (despite Defendant already failing to follow even that arbitration process), Defendant only offered refunds to "primary market ticketholders" in its

---

[1] Plaintiff does not know if a different or substantially similar email was sent in the days leading up to August 5, 2024, or between August 5, 2024 and today's filing date. An evidentiary hearing would resolve this question.

[2] Plaintiff will address the arguments in Defendant's Opposition, but clearly Defendant continues to send out confusing communications to putative class members.

August 5, 2024, email (and now only to certain re-sale ticket purchasers in its August 30, 2024 email).[3]

## II.     BACKGROUND

The facts are set forth in Plaintiff's Motion, but for the Court's convenience, a few significant points should be considered. Not surprisingly, Defendant describes the July 14, 2024, Final Match of the 2024 Copa America tournament at Hard Rock Stadium as if the chaos took place without any culpability of Defendant SFS or other Defendants. Opposition, p. 4. But as Plaintiff alleges, the melee that took place was not just the result of unruly fans but was in fact caused by the Defendants' negligence. Complaint, ¶¶103-133. Nevertheless, Defendant's August 5, 2024, email followed a series of public statements that were confusing at best and misleading at worst. For example, Defendant established a "Frequently Asked Questions" page on its website that directed all putative class members to Ticketmaster, who Defendant claimed was "responsible for processing the refunds." Motion, p. 7. The August 5, 2024, email claimed it was a refund offer that was "consistent with the spirit and purpose of the Informal Dispute Resolution provision included in Ticketmaster's Terms of Use, which you agreed to when purchasing your tickets to the Event." Motion, p. 8. Although "spirit and purpose" is ambiguous, Defendant asserts it has the right to enforce Ticketmaster's Terms of Use despite it not being a party to that agreement because Ticketmaster is somehow "very much a party to this litigation." Opposition, p. 10. But this is a specious claim because, of course, Ticketmaster is not a party to the instant litigation.[4] Even if

---

[3] A "Frequently Asked Questions" link in the August 30, 2024 email excludes "Fans who purchased tickets on secondary market ticket re-sale platforms (e.g., Stubhub, SeatGeek, Gametime, etc. *See* Exh. A;           https://www.hardrockstadium.com/tm-refund-process/?msdynttrid=4f_NFdFMKy2MWX-6hSjoB0wW286MlXonjX3PMrdomTI, last visited on August 30, 2024.

[4] It is understood that as of this date, Ticketmaster is actually not a party to any current litigation.

Ticketmaster were a party, that does not provide Defendant with the legal right to enforce Ticketmaster's Terms of Use. Announcing to putative class members that they already agreed to a non-party's dispute resolution process for negligence claims is deceptive and misleading, but even if this was not Defendant's intent, pronouncing legal conclusions regarding putative class members' rights threatens the proper functioning of the litigation. *Jones v. Jeld-Wen, Inc.* 250 F. R.D. 554, 563-564 (S. D. Fla 2008) (need not be a "nefarious motive" on defendant's part for court to issue protective order controlling defendant's communications with putative class). Defendant's claim that "all Primary Market Purchasers agreed to Ticketmaster's Terms of Use," is a disputed fact. Opposition, pp. 10-11. Defendant also claims that "under the law of third-party beneficiary, agency and estoppel, SFS plainly has the right to enforce Ticketmaster's Terms of Use." *Id*. p. 11. Contrary to being "plain," this legal issue is also disputed. Defendant focuses on the use of the phrases "if you choose," and "if you sign," but still argues that their intended audience "agreed to engage in an informal dispute resolution process" by "agreeing to the Ticketmaster Terms of Use." Opposition, p. 11. The lack of details about what Defendant claims is a "full refund" of the "entire purchase price" and whether that offer includes ticketing fees likewise confuses. *Id*., p. 8. Defendant refers to a ticket's "face value" without describing anywhere the actual amount of the ticket face value or where to find it. Opposition, p. 13. Simply claiming that "face value" has a commonly understood and plain meaning does not provide a commonly understood and plain answer on the refund amount Defendant is actually offering. That is simply nowhere to be found – not on Defendant's website, not in its August 5, 2024, email, and not in its Opposition.[5]

---

[5] Likewise, the August 30, 2024 email link invites similar confusion as to the amount of refund available.

### III.   ARGUMENT

#### A.   In Florida, Class Counsel Has a Fiduciary Obligation to Protect the Class From the Date of Filing the Complaint

Although no class has been certified and absent class members are not represented by Plaintiff's counsel, the Florida Supreme Court places a fiduciary duty on Plaintiff and Plaintiff's counsel to protect the interests of the putative class. *The Florida Bar v. Adorno*, 60 S 3d 1016, 1025 (Fla. 2011) (attorney-client relationship with putative class is a separate issue from class counsel's fiduciary duty to putative class). Accordingly, Plaintiff's counsel has an ethical and professional responsibility to ensure that the putative class is not subject to misleading, deceptive, confusing, or abusive communications from Defendant. While a defendant can communicate with putative class members prior to class certification, a court can limit those communications. *Gulf Oil v. Bernard*, 452 U.S. 89, 101-02 (1984). A protective order is justified when a particular form of communication has occurred or is threatened to occur and is abusive "in that it threatens the proper functioning of the litigation." *Taaffe v. Robinhood Mkts., Inc.*, 2020 WL 1531127, at *3 (M.D. Fla. Mar. 31, 2020) (citations omitted). Thus, "a limited restriction—such as precluding a defendant from soliciting class members to opt out of the litigation—will sometimes be justified." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. at 561 (citing *Great Rivers Cooperative of Southeastern Iowa v. Farmland Industries, Inc.,* 59 F.3d 764, 766 (8th Cir.1995) (quoting Manual for Complex Litigation, Second § 30.24 at 232 (citing *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985))). A protective order here is justified given Defendant's communications.

#### B.   A Reasonable Class Member Would Not Understand the Phrases "Primary Market Ticket Purchaser," "Secondary Market Ticket Purchaser," "Face Value," or Even "Class Action"

Defendant fails to rebut the deceptive and misleading nature of its settlement "offers." Defendant claims that its communications are only directed at "primary market ticket purchasers"

who paid face value for their tickets. Opposition, p. 13. But the "face value" amount is not designated, and no Final Match ticket included a "face value" amount on its face (or back). Expecting putative class members to simply know that they are part of a primary market or secondary market, or what face value means for a refund is confusing. Every ticket purchaser had to download tickets through the Ticketmaster site. Motion, p. 7; Opposition, p. 4, n. 5. However, the vast majority of the putative class may not be "primary market" ticket buyers because they purchased from resellers. The way in which Ticketmaster and resellers are related is not well understood. Indeed, Defendant plans to institute a process for secondary market purchasers to obtain a face value refund.[6] Moreover, many if not most putative class members receiving Defendant's communications may not even understand the meaning of the phrase "class action." They are unlikely to understand the legal claims being advanced in this litigation and the relinquishment of their rights to pursue all of their damages from Defendant rather than a tiny portion of that loss Defendant offers.

Further, the communications from Defendant are only in English, despite the fact that both teams competing in the Final Match represent Columbia and Argentina and thus drew fans from both countries and cultures. Even the location of the event in Miami, Florida, suggests that English may not be the first language for many class members.[7] Thus, to issue its communications in

---

[6] Defendant specifically "reserves the right to engage in similar communications with Secondary Market Purchasers about their potential refund options, consistent with those purchasers' right to independently and directly resolve their claims (subject, of course, to any modifications that may be necessary to reflect how their circumstances differ from those of Primary Market Purchasers)." Opposition, p. 19 n. 18. Defendant's August 30, 2024, email may be an example of this, but it is unclear.

[7] One recent article estimates that just 25% of Miami is Native English speaking. *See* https://www.languagemagazine.com/2024/02/10/miami-english-recognized-as-dialect/#:~:text=Miami%20is%20proudly%20one%20of,just%2025%25%20Native%20English%20speaking, last visited on August 28, 2024.

English only with confusing terms like primary market, secondary market, face value, and class action and little to no context or explanation of the claims being advanced or how a class action works fails the directive from the court in *Kleiner* for communications to have the goal of informed consent. *Kleiner v. First National Bank of Atlanta*, 751 F. 2d at 1202-03 ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.").

### C.    A Reasonable Class Member Would Not Know the Face Value of Their Ticket Because No Face Value is Ever Printed On A Ticket

Defendant's "refund offer" is conspicuously missing the most important provision – the amount being offered or how to find it. Instead, Defendant offers only the "face value" of the ticket yet points to no actual way for class members to know this amount and provides no explanation in the evidence submitted in its Opposition. This fact alone renders the Defendant's communications misleading and abusive. Without a concrete dollar amount, a putative class member cannot fairly consider whether "the class action vehicle offer(s) the possibility of a more favorable result than the proposed settlement." *Cox Nuclear Medicine v. Gold Cup Coffee Services*, Inc., 214 F.R.D. 696, 699 (S. D. Ala. 2003). Defendant argues that class members "obviously understand" the meaning of "face value," but Defendant fails to explain how class members can determine a specific amount, in reality. The task should be as simple as attaching an email from Ticketmaster or a chart reflecting the "face value" for each ticket. Further, Defendant never clarifies whether the Ticketmaster fees are included in the "face value." Ticket purchasers are likely to pay 30% of a ticket's "face value" in additional fees to Ticketmaster. *See* https://thehustle.co/the-sneaky-economics-of-ticketmaster#:~:text=Concertgoers%20are%20now%20likely%20to,ever%20because%20of%20increased%20demand, last visited on August 28, 2024. Yet Defendant fails to explain to class

members that they will not be refunded any Ticketmaster fees. Likewise unclear is whether "face value" is some unknown wholesale amount that is a small fraction of the amount paid by primary market purchasers. Accordingly, Defendant's statements do not provide putative class members with enough information to make an informed decision and are therefore misleading and constitute conduct that undermines the purpose of Rule 23. *Braswell v. Bow Plumbing Group, Inc*., 2024 WL 2401782, *3 (M.D. Ala. May 23, 2024) (quoting *In re Katrina Canal Breaches Litig*., 628 F. 3d 185, 197 (5th Cir. 2010) ("Federal Rule of Civil Procedure 23 'requires that class members be given information reasonably necessary for them to make a decision.'"); *see also, Kleiner v. First National Bank of Atlanta*, 751 F.2d at 1203 ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent…")

### D. Defendant Deceptively Attempts to Compel Prospective Class Members to Release the Legal Rights of Others

Perhaps the most egregious aspect of Defendant's "settlement" communications is that Defendant does not just seek a release and waiver from the individual requesting a refund for purchased tickets, but rather insists, without any basis in law, that the individual also agree to release and waive the legal rights of each and every person that had a ticket purchased for them. Defendant refers to these persons as "Related Persons." Opposition, p. 14. Defendant claims this is because it does not want to pay refunds for the same tickets more than once. Opposition, p. 14. However, Defendant cannot explain why a simple list of names would not be enough if Defendant wanted to keep track of refunded tickets. A more likely explanation is that this extended release is just a litigation tactic to solicit more releases and class action waivers based on an already misleading communication. Defendant may have already solicited hundreds of releases.

Defendant cites *Noel v. MHC Heritage Plantation*, 2022 WL 3682086, *1 (S.D. Fla. June 13, 2022), as permitting such communications but that case actually supports Plaintiff's position.

Opposition, p. 7. In an earlier ruling, the *Noel* court granted in part plaintiffs' expedited motion to limit class member communications that plaintiffs alleged (1) failed to detail the exact damages to which the putative class would be entitled; (2) failed to explain that all past, present, and future claims would be released, and (3) implied defendants' offer was the most that the class member could receive. *Noel v. MHC Heritage Plantation*, 2022 WL 18023536, *3 (S.D. Fla. April 20, 2022). It held that "in the interest of ensuring that the potential class members receive all the information necessary to make an informed decision about their participation in this litigation," defense counsel were to copy plaintiffs' counsel on "any communication between Defendants. . . and putative class members." *Id*. Here, like *Noel*, Defendant has implied that its current offer is all that the putative class members can receive, which simply is not true given the claims asserted in this case. But Defendant here goes even further and demands releases from "Related Persons." It offers no legal basis to require one adult to release claims of another adult without any input, notice, knowledge, or chance to object from the additional adult whose claims are purportedly being released. The Supreme Court has emphasized the "fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party." *See Taylor v. Sturgell,* 553 U.S. 880, 898, 128 S. Ct. 2161, 171 L.Ed.2d 155 (2008) (citing *Richards v. Jefferson County*, 517 U.S. 793, 798-99, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996)). So too it must be for a release of claims by one individual who may or may not understand their representative capacity, on behalf of others who may or may not be aware of the release. Certainly, such a release is unconscionable, even more so where a class has not yet even been certified and where Defendants have no legal basis for such a release.

Defendant's attempt at such a sweeping release can be likened to "virtual representation" for claim preclusion, which the Supreme Court has disapproved. *See Taylor v. Sturgell*, 553 U.S.

at 893-95. In *Taylor*, the Supreme Court noted that extending the preclusive effect of a judgment to a nonparty runs up against the "deep-rooted historic tradition that everyone should have his own day in court." *Id. at* 892-93 (quoting *Richards, supra*). The Supreme Court's *Taylor* analysis is instructive here. It held that a party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum the interests of a party and a nonparty are aligned, and either the party understood herself to be acting in a representative capacity or the court took care to protect the interests of the nonparty. *Id.* (citations omitted). "In addition, adequate representation sometimes requires notice of the original suit to the persons alleged to have been represented." *Id.* at 900. The Supreme Court continued, "[i]n the class action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23." *Id.* But at this stage of the instant action, there are no procedural safeguards available to the "Related Persons" for Defendant's extended release and class action waiver that is executed by another, and where Defendant has not provided any notice to those Related Persons.

Plainly, the Defendant's requirement of a release of additional "Related Persons" is unconscionable, violative of those individuals' due process rights, lacking in consideration, and warrants the protective order requested.

## IV.    CONCLUSION

For the reasons stated above, this Court should hold an evidentiary hearing to clarify the extent of Defendant's communications with putative class members, thereafter grant Plaintiff's Expedited Motion for a Protective Order Limiting Defendant's Communications with Putative Class Members, and order the additional relief requested.

Dated: August 30, 2024

**VARNELL & WARWICK, P.A.**

/s/ Brian W. Warwick
Brian W. Warwick; FBN: 0605573
Janet R. Varnell; FBN: 0071072
Jeffrey L. Newsome; FBN: 1018667
Pamela G. Levinson, FBN: 538345
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
bwarwick@vandwlaw.com
jvarnell@vandwlaw.com
jnewsome@vandwlaw.com
plevinson@vandwlaw.com
cbrochu@vandwlaw.com
ckoerner@vandwlaw.com

*Attorneys for Plaintiff and the*
*Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this August 30, 2024, a true and correct copy of the

foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system,

which will serve all counsel of record.

/s/ Brian W. Warwick
Brian W. Warwick
