**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No. 1:24-cv-22751-BLOOM/Elfenbein**

DAS NOBEL, EDUARDO MARTINEZ, DANIEL GRANDE, WILLIAM POU, DAVID ZIEMEK and JOSEPH ABADI, on behalf of themselves and on behalf of all others similarly situated,

Plaintiffs,

vs.

SOUTH FLORIDA STADIUM LLC d/b/a HARD ROCK STADIUM; CONFEDERACIÓN SUDAMERICANA DE FÚTBOL d/b/a CONMEBOL, CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL d/b/a CONCACAF, and BEST CROWD MANAGEMENT, INC.,

Defendants.

______________________________________________/

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE PLAN AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

I. INTRODUCTION .......... 1

II. PROCEDURAL POSTURE .......... 2

III. THE SETTLEMENT .......... 4

a. Proposed Settlement Class .......... 4

b. Settlement Relief .......... 4

1. The Denied Entry Class .......... 4

2. The Denied Full Access Class .......... 5

3. Attorneys' Fees and Costs .......... 5

IV. PRELIMINARY APPROVAL IS WARRANTED AND NOTICE SHOULD BE ISSUED .......... 6

a. The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23 .......... 6

1. Rule 23(a)(1)–Numerosity .......... 7

2. Rule 23(a)(2) – Commonality .......... 8

3. Rule 23(a)(3) –Typicality .......... 9

4. Rule 23(a)(4)–Adequacy of Representation .......... 9

b. Rule 23(b)(3)–Common Questions of Law or Fact Predominate and Class Action Is Superior to Other Available Methods to Resolve This Controversy .......... 10

c. The Proposed Settlement Is Fair, Adequate and Reasonable Under Rule 23(e)(3) .......... 11

1. The Named Plaintiffs and Class Counsel Have Adequately Represented the Classes .......... 12

2. The Proposed Settlement Was Negotiated at Arm's Length .....................12

3. The Relief Provided to the Classes Is Adequate .......................................13

a. The costs, risks, and delay of trial and appeal ..............................14

b. The effectiveness of any proposed method of distributing relief to the classes, including the method of processing Class Member claims ..................................................................15

c. The terms of any proposed award of attorneys' fees, including timing of payment ........................................................15

d. Any agreement required to be identified under Rule 23(e)(3).......16

4. The proposal treats Class Members equitably relative to one another ......16

V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS......................................................................17

a. Administration and Claims Submission ..............................................................18

1. Denied Entry Class Member-Specific Claim Submissions .......................19

b. Settlement Administrator .........................................................................................20

c. The Proposed Notice Plan Satisfies Rule 23........................................................20

VI. CONCLUSION...........................................................................................................21

# TABLE OF AUTHORITIES

**Cases** **Pg(s)**

*Accord Mees v. Skreened, Ltd.*,
No. 14-cv-142, 2016 WL 67521 (S.D. Ohio Jan. 6, 2016) ..... 12

*Adams v. S. Farm Bureau Life Ins. Co.*,
417 F. Supp. 2d 1373 (M.D. Ga. 2006) ..... 17

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012) ..... 17

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ..... 6

*Archbold v. Wells Fargo Bank, N.A.*,
No. 13-cv-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015) ..... 12

*Armstead v. Pingree*,
629 F. Supp. 273 (M.D. Fla. 1986) ..... 7, 8

*Bluetooth Headset*,
654 F.3d 935 (9th Cir. 2011) ..... 16

*Busby v. JRHBW Realty*,
513 F.3d 1314 (11th Cir. 2008) ..... 9, 10

*Camden I Condominium Assn. v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) ..... 16

*City of St. Petersburg v. Total Containment, Inc.*,
265 F.R.D. 630 (S.D. Fla. 2010) ..... 10

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ..... 13

*Cox v. American Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ..... 8

*Dickens v. GC Servs. Ltd. P'ship*,
706 Fed. Appx. 529 (11th Cir. 2017) ..... 11

*Eisen v. Carlisle & Jaqueline*,
417 U.S. 156 (1974) ..... 17

*Faught v. American Home Shield Corp.*,
668 F.3d 1233 (11th Cir. 2011) .................................................................................. 13, 16

*Fuller v. Becker & Poliakoff, P.A.*,
197 F.R.D. 697 (M.D. Fla. 2000)............................................................................................ 7

*Hemphill v. San Diego Ass'n of Realtors, Inc.*,
225 F.R.D. 616 (S.D. Cal. 2004) .......................................................................................... 12

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................ 16

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ................................................................................................ 13

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
55 F.3d 768 (3d Cir. 1995)..................................................................................................... 16

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................................ 12

*In re Terazosin Hydrochloride*,
220 F.R.D. 672 (S.D. Fla. 2004)............................................................................................. 8

*Johnson v. NPAS Sols., LLC*,
975 F.3d 1244 (11th Cir. 2020) .............................................................................................. 5

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) .................................................................................................. 8

*Kelly v. Sabretech Inc.*,
195 F.R.D. 48 (S.D. Fla. 1999)............................................................................................. 10

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ............................................................................................ 11

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) ........................................................................................... 8, 9

*Lee v. Ocwen Loan Serv., LLC*,
2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ..................................................................... 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)............................................................................................................... 17

*Pearson v. Ecological Sci. Corp.*,
522 F.2d 171 (5th Cir. 1975) .................... 17

*Prado–Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000) .................... 7

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) .................... 11

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .................... 13

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) .................... 12

*Venerus v. Avis Budget Car Rental, LLC*,
674 F. Supp. 3d 1107 (M.D. Fla. 2023) .................... 5

**Rules**

FED. R. CIV. P. 23(c)(2)(B), (e)(1) .................... 18

Fed. R. Civ. P. 23(e)(1) .................... 6

Fed. R. Civ. P. 23(e)(2) .................... 6

Rule 23 .................... 21

Rule 23(a) .................... 6

Rule 23(a)(1) .................... 7, 8

Rule 23(a)(2) .................... 8

Rule 23(a)(3) .................... 9

Rule 23(a)(4) .................... 9, 10

Rule 23(b)(3) .................... 10, 11

Rule 23(e) .................... 1

Rule 23(e)(2) .................... 16, 17

Rule 23(e)(2)(c) .................... 13

Rule 23(e)(3) .................... 11, 13, 16

S.D. Fla. L.R. 7.1(d)(2) ........................................................................................................... 1

**Misc**

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 ................................................................. 13

Plaintiffs, Das Nobel, Eduardo Martinez, Daniel Grande, William Pou, David Ziemek (together, "Denied Entry Plaintiffs" or "Nobel"; "Martinez"; "Grande"; "Pou"; and "Ziemek"), and Joseph Abadi ("Denied Full Access Plaintiff" or "Abadi") (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated (the "Class" or "Class Members"), by and through undersigned counsel, move for preliminary approval of a Class Action Settlement and approval of the proposed Notice Plan pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (the "Settlement Agreement").[1] The reasons for the Motion are set forth below.

## I. INTRODUCTION

This case concerns significant financial relief totaling a maximum of $14 million, being provided to ticketholders who attended the Copa America Final Match (the "Final Match"), which took place at Hard Rock Stadium on July 14, 2024. Plaintiffs and their counsel are pleased to deliver this significant result in just over one-years' time.[2]

Following partial briefing on arbitration and motions to dismiss by some of the Defendants (with reply deadlines having been stayed), the Parties participated in a three-month mediation process including an in-person all-day mediation session with all Parties represented, a second zoom video conference mediation, and months of negotiations thereafter. Plaintiffs file this Motion requesting that the Court preliminarily approve the proposed Settlement Agreement and find that the Proposed Settlement appears to be fair, adequate, and reasonable such that

[1] Capitalized words and phrases in this Memorandum are intended to coincide with the defined terms set forth in Section I of the proposed Settlement Agreement.

[2] Although this Motion may have qualified for time-sensitive treatment, pursuant to S.D. Fla. L.R. 7.1(d)(2), the Parties were unable to agree on such a designation. Accordingly, Plaintiffs respectfully request that the Court issue an Order Granting Preliminary Approval (the "Approval Order") before January 19, 2026 (or as soon as possible thereafter). A proposed Order, which has been agreed to by all Parties, is attached as Exhibit 1.

notice should be issued to the Settlement Classes pursuant to Rule 23(e). Plaintiffs also seek approval of the proposed Notice Plan which provides notice to the class regarding the terms of the settlement, establishes a process for submitting objections and requests for exclusion, and provides for the Court to hold a Final Approval Hearing.

## II. PROCEDURAL POSTURE

This case, *Das Nobel, et al. v. South Florida Stadiums, LLC et al.,* Case No.: 1:24-cv-22751 ("Nobel Action"), was one of five class actions filed arising out of the attempts by unruly fans without tickets to gain entrance to the Final Match on July 14, 2024. Plaintiff Nobel filed the first federal class action complaint in this Court on July 19, 2024, only five days after the Final Match (the "Nobel Action"). [Dkt. 1]. In addition, the following class actions were filed after the Nobel Action:

- *Pou v. CONMEBOL, et al*., Case No. 1:24-cv-22828-BB;
- *Valderrama, et al. v. CONMEBOL, et al.,* Case No. 1:24-cv-22772-BB;
- *Manco v. South Florida Stadium LLC,* Case No. 1:24-cv-23195-BB; and
- *Martinez v. South Florida Stadium LLC,* Case No. 1:24-cv-23324-RAR

By agreement of Plaintiffs' counsel among these "Copa America Class Action Cases," all the Copa America Class Action Cases were either consolidated within the Nobel Action or dismissed without prejudice. Therefore, the Nobel Action became the sole class action related to the Final Match, and Varnell & Warwick, P.A. agreed to serve as lead counsel.[3]

The Nobel Action initially alleged one count of negligence and one count of unjust enrichment against Defendants, South Florida Stadium LLC d/b/a Hard Rock Stadium ("Hard Rock"), Confederación Sudamericana De Fútbol d/b/a CONMEBOL ("CONMEBOL"),

[3] The parties in one additional case relating to the Final Match, *Kattia Garn v. South Florida*, Case. No. 24-25087-CV-WILLIAMS, have filed a motion to vacate the district court order from which the appeal was taken and dismiss the pending appeal. Following a ruling from the Eleventh Circuit, the parties will seek dismissal of the case without prejudice.

Confederation of North, Central America and Caribbean Association Football d/b/a Concacaf ("Concacaf"), and BEST Crowd Management, Inc. ("BEST"). [Dkt. 1].

The First Amended Consolidated Complaint alleged two counts of negligence and one count of unjust enrichment and added Plaintiffs Martinez, Grande, Pou, and Ziemek and Defendants, the Miami Dolphins Ltd. (the "Dolphins"), County Line South Properties, LLC ("CLS Properties"), Dolphin Center Properties, LLC ("DC Properties"). [Dkt. 83].

The Complaint and First Amended Consolidated Complaint alleged a single class, defined as all persons who had a ticket to the Final Match and were denied entry to Hard Rock Stadium (the "Denied Entry Class"). [Dkts. 1, p 18; 83, p. 33].

The Second Amended Consolidated Complaint added Plaintiff Abadi and added an additional class consisting of all ticketholders who were admitted to the Final Match but were denied full access and enjoyment of Hard Rock Stadium, including concessions and merchandise due to the closures caused by the attempts by unruly fans without tickets to gain entrance to the Final Match. (the "Denied Full Access Class"). [Dkt. 171, pp. 32, 33, 34].

In the Nobel Action, Plaintiffs and Defendant SFS fully briefed Plaintiffs' Emergency Motion to Limit Class Member communications [Dkts. 10, 20, 30, 35], upon which the Court issued a Report and Recommendation finding that the Motion should be granted. [Dkt. 142]. The Parties also briefed the Motion to Stay [Dkts. 118, 121]; Motions to Dismiss [Dkts. 114, 119, 133, 135, 146]; Motions to Dismiss and in the alternative to Stay [Dkts. 115, 146, 147]; and Motions to Compel Arbitration [Dkts. 113, 117, 131, 132, 134, 136, 137] or otherwise joined in the Motions or sought a stay of deadlines to respond.

The Parties voluntarily mediated this matter before this Court ruled on any of the above pending motions.

## III. <u>THE SETTLEMENT</u>

On March 28, 2025, the Parties attended an in-person mediation with mediator, Terry White of Upchurch Watson & Max where a general outline of an agreement was discussed. On May 13, 2025, the Parties attended a second remote mediation session with Mr. White, where more details of the proposed agreement were reached. The Parties continued to negotiate at arms-length until the material settlement terms were reached and memorialized in a Term Sheet on July 3, 2025. Thereafter, the Parties negotiated the details of the Settlement Agreement. On November 17, 2025, the Parties executed the Settlement Agreement on which Plaintiffs now seek preliminary approval from this Court. A copy of the Settlement Agreement is included as Exhibit 2.

### a. Proposed Settlement Class

The Settlement includes two distinct Classes. First, the Denied Entry Class (the "Denied Entry Class") is defined as:

> **Denied Entry Class:** All ticketholders to the Copa America Final Match who were denied entry to Hard Rock Stadium.

(Exhibit 2, Settlement Agreement, p. 24).

Second, the Denied Full Access Class (the "Denied Full Access Class") is defined as:

> **Denied Full Access Class:** All ticketholders to the Copa America Final Match who were admitted to Hard Rock Stadium, but were denied full access to and enjoyment of Hard Rock Stadium facilities or to specific seats purchased.

(*Id.*)

### b. Settlement Relief

Pursuant to the Settlement, Defendants have agreed to collectively pay a maximum amount of $14 Million which will be divided amongst the following two classes as follows. (*Id.*, p. 26–27).

#### 1. The Denied Entry Class.

All Denied Entry Class Members who timely submit a valid, Approved Claim will be eligible to recover Out-of-Pocket Ticket Costs, up to but not to exceed $2,000 per ticket. (*Id.*, pp. 28–29). Denied Entry Class Members who timely submit a valid Claim Form will each be eligible to receive up to $300 in Out-of-Pocket Travel Costs. (*Id.*). The maximum amount that each Denied Entry Class Member is eligible to receive is $2,000 per ticket inclusive of both Out-of-Pocket Ticket Costs and Out-of-Pocket Travel Costs.

**2. The Denied Full Access Class.**

Denied Full Access Class Members who timely submit a valid, Approved Claim will be eligible to recover up to $100 per ticket. (The Denied Entry Class and Denied Full Access Class will be referred to herein as "the Classes".)

**3. Attorneys' Fees and Costs.**

Class Counsel will submit a motion for attorneys' fees seeking a maximum of $3,500,000 in attorneys' fees and litigation costs from the Settlement Fund, which is equal to 25% of the Settlement Fund. (*Id.*, at 46).

Finally, Class Counsel have reserved the right to seek reasonable Service Awards for the Named Plaintiffs, not to exceed $5,000.00 each. (*Id.*, pp. 46, 47). Although the Eleventh Circuit precluded Service Awards for cases advancing federal claims in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), Class Counsel asserts that courts within this District have recognized that such awards are still available when state law claims are also advanced. *Junior v. Infinity Ins. Co.*, Case No. 6:18-cv-1598-WWB-EJK (M.D. Fla. 2023) ("*Johnson I* examined federal common law, based on a federal cause of action, to arrive at its decision. There is nothing in *Johnson I* to suggest that it is applicable to cases arising under state law."); *Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023). Here, Plaintiffs have only

alleged state law claims, and therefore Class Counsel asserts that a reasonable Service Award for each of the Named Plaintiffs is appropriate.

## IV. PRELIMINARY APPROVAL IS WARRANTED AND NOTICE SHOULD BE ISSUED

Rule 23(e) states that "sufficient information" must be provided to the District Court at the settlement stage for it to determine whether to "give notice to the class." Fed. R. Civ. P. 23(e)(1). Notice to the class is "justified" when and if the Court determines that the class can be certified for "purposes of judgment on the proposal" and where the terms of the settlement appear to be fair, adequate and reasonable. Fed. R. Civ. P. 23(e)(2).

As a preliminary matter, and as briefed in the record, Defendants disagree that the case is suitable for certification of a contested class. They also take the position that Class Members are required to arbitrate their claims individually. Defendants also deny and are also prepared to vigorously defend against the material allegations of the Complaint, and intend to pursue several legal and factual defenses. Defendants consent to certification of the proposed Classes for settlement purposes only.

If approved, the Settlement will bring certainty, closure, and significant and valuable relief for individuals to what otherwise would likely be contentious and costly litigation regarding the Final Match.

### A. The Proposed Settlement Class Satisfies the Certification Requirements of Rule 23

In order for a settlement class to be certified, the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). The class representative must also have Article III standing and the proposed settlement class must be adequately defined and ascertainable. *See Prado–Steiman ex rel. Prado v. Bush*, 221

F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class ... the district court must determine that at least one named class representative has Article III standing to raise each class subclaim").

Here Plaintiffs' claims fall into two Classes based upon the injuries suffered from the same course of alleged actions and inactions of Defendants. First, all members of the Denied Entry Class, including Named Plaintiffs Nobel, Martinez, Grande, Pou and Ziemek, were denied entry to Hard Rock Stadium despite possession of a valid ticket. Denied Entry Class Members were prevented from watching the Final Match in person and all suffered the same harm, being excluded from Hard Rock Stadium for the Final Match. Therefore, all five Denied Entry Class Named Plaintiffs, Nobel, Martinez, Grande, Pou and Ziemek have standing to represent the Denied Entry Class.

Second, all members of the Denied Full Access Class were denied access to concessions, and/or merchandise, and/or full enjoyment at Hard Rock Stadium upon admission. Therefore, the Denied Full Access Class Named Plaintiff, Abadi, has standing to represent the Denied Full Access Class.

Because each claim turns on allegations regarding Defendants' actions and inactions at the Final Match, the Named Plaintiffs submit that any ultimately determined liability would turn on common evidence.

**1. Rule 23(a)(1)–Numerosity.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of the members is impracticable"; however, impracticable does not mean impossible. *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). Where the class numbers 25 or more, joinder is usually impracticable. *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). "[W]hile there is no

fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate…" *Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986) (internal citations omitted).

Here, there are estimated to be thousands of Denied Entry Class Members and Denied Full Access Class Members. These numbers easily satisfy the numerosity requirement of Rule 23(a)(1).

**2. Rule 23(a)(2) – Commonality.**

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there be a common question of law or fact. Not all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class members. *Armstead*, 629 F. Supp. at 280; *Pottingar v. Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989). "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984).

Courts have held that a "common nucleus of operative facts" is typically sufficient to meet the commonality requirement of Rule 23(a)(2). *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "Common nuclei of fact are typically manifest where … the defendants have engaged in standardized conduct towards members of the proposed class..." *Id*. "Where the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members, the commonality requirement will generally be met." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004).

Plaintiffs' claims depend on the same alleged common course of actions and omissions by Defendants at the Final Match. Specifically, the central common question in this case is whether

Defendants were negligent concerning the Final Match. Thus, the commonality requirement of Rule 23(a)(2) is also satisfied for purposes of certifying the Settlement Classes.

**3. Rule 23(a)(3) –Typicality.**

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiff be typical of the claims of the class. A claim is typical if it arises from the same practice that gives rise to the claims of other class members and the claims are based on the same legal theory. *Kornberg*, 741 F.2d at 1337.

Here, the relevant consideration in each Class Member's claim is (1) whether they were denied entry or (2) whether they were admitted and, thereafter, denied full access. Because Plaintiffs Nobel, Martinez, Grande, Pou and Ziemek were precluded from entering the stadium despite having valid tickets to the Final Match, their claims are typical of the members of the Denied Entry Class. Similarly, because Plaintiff Abadi was denied full access once he was admitted to the stadium, his claims are typical of the members of the Denied Full Access Class who were also denied full access. Accordingly, the typicality requirement is also met.

**4. Rule 23(a)(4)–Adequacy of Representation.**

Rule 23(a)(4)'s adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Busby v. JRHBW Realty*, 513 F.3d 1314, 1323 (11th Cir. 2008).

For the purposes of conditionally certifying the Settlement Classes described herein, the Named Plaintiffs in this matter have no interests antagonistic to the Classes they seek to represent. Named Plaintiffs have participated fully in investigation and, gathered voluminous documents in support of Named Plaintiffs' claims, reviewed drafts of motions and other briefing, participated in multiple mediations, and/or participated in settlement. From the inception of this case, Named

Plaintiffs have been focused on obtaining relief for the tens of thousands of fans who attended the Final Match.

The Named Plaintiffs have also met their burden by retaining counsel experienced in class action litigation. Class counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action. *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010). Lead Class Counsel in this case, Varnell & Warwick, PA. has been appointed lead and class counsel in over 75 class actions in state and federal courts, including cases before this Court. (Exhibit 3, Decl. of B. Warwick; Exhibit 4, Decl. of J. Newsome). Based on the above, the requirements of Rule 23(a)(4) have been satisfied, for the purpose of certifying the Settlement Class described herein.

**B. Rule 23(b)(3)–Common Questions of Law or Fact Predominate and Class Action Is Superior to Other Available Methods to Resolve This Controversy**

Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance) and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3); *Busby*, 513 F.3d at 1326. As discussed above, the predominant common question in this case is whether the Defendants fulfilled any legal duty they had related to security at the Final Match and whether the breach of any duty caused harm to Plaintiffs and the Classes. Because these common questions would apply to all Class Members, predominance is satisfied.

Efficiency is the primary focus in determining whether a class action is the superior method for resolving the controversy presented. "[T]he class action procedure allows for the efficient and economical litigation of a question potentially affecting every class member." *Kelly v. Sabretech Inc.*, 195 F.R.D. 48, 51 (S.D. Fla. 1999). "Proper superiority analysis considers 'the relative

advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 537-38 (11th Cir. 2017) (*quoting Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010)). When common issues predominate over individual ones, superiority often is found because the less that individual questions are central to litigation, the less interest individual class members have in controlling the litigation. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004).

Here, common issues surrounding security at the Final Match are central to the litigation (thus satisfying the first of four prongs of the superiority analysis) and the other three prongs also favor class treatment – other than individual, non-class cases related to alleged bodily injuries, no action was "already commenced" by any member of the class prior to this litigation, that has not already been consolidated with this case. Thus, it is desirable and efficient to concentrate all class members' identical claims in this forum, and Named Plaintiffs are unaware of any difficulties in the management of this action that are not addressed by the agreed upon claims process.

Accordingly, for the purposes of certifying the Settlement Classes described herein, the predominance and superiority elements of Rule 23(b)(3) have been met. Where all the necessary elements of Rule 23(b) have been established, certification of the Settlement Classes is appropriate, and the Court should grant preliminary approval on this basis.

### C. <u>**The Proposed Settlement Is Fair, Adequate and Reasonable Under Rule 23(e)(3)**</u>

The second issue for the Court to determine at the preliminary approval stage under amended Rule 23(e) is whether the Court is "likely" to approve the settlement as fair, adequate and reasonable. There are four factors listed in Rule 23(e)(3) which are to be considered when examining the fairness of a proposed settlement: (A) the class representatives and class counsel

have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. The proposed Settlement satisfies each component.

**1. The Named Plaintiffs and Class Counsel Have Adequately Represented the Classes.**

The Named Plaintiffs' and Class Counsel's adequate representation of the Settlement Classes is addressed above under the requirements of Rule 23. A further review of the record before this Court shows that both the Named Plaintiffs and Class Counsel have adequately represented the class throughout this litigation.

**2. The Proposed Settlement Was Negotiated at Arm's Length.**

To warrant preliminary approval, the terms of a class action settlement should reveal that it is "the product of serious, informed, non-collusive negotiations." *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In making this determination, courts begin with a presumption of good faith in the negotiating process. *See Lee v. Ocwen Loan Serv., LLC*, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("There is a presumption of good faith in the negotiation process.").[4] As explained above, that occurred here.

The Parties here were represented by capable counsel who were experienced in complex actions and consumer litigation and negotiated at arm's length. The Parties' settlement

---

[4] *Accord Mees v. Skreened, Ltd*., No. 14-cv-142, 2016 WL 67521, at *2 (S.D. Ohio Jan. 6, 2016) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."); *Archbold v. Wells Fargo Bank, N.A.*, No. 13-cv-24599, 2015 WL 4276295, at *2 (S.D. W. Va. July 14, 2015) (same); *Hemphill v. San Diego Ass'n of Realtors, Inc*., 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement:").

negotiations were protracted, requiring two separate mediation sessions followed by approximately four (4) months of negotiating the Term Sheet and Settlement Agreement. Critically, settlement discussions did not begin until after extensive motion practice on one of the most important issues in this case - arbitration. Accordingly, "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42.

Thus, the Parties were not "groping in the darkness" during their negotiations, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977), and the proposed Settlement was certainly not "the product of uneducated guesswork." *In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 211 (5th Cir. 1981); *accord Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").[5]

As a result, this second factor also weighs in favor of granting preliminary approval to the proposed settlement.

### 3. The Relief Provided to the Classes Is Adequate.

Rule 23(e)(2)(c) provides four additional considerations that must be taken into account when determining whether the relief being provided under the Proposed Settlement is "adequate": (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Under the Settlement, Denied Entry Class Members who timely submit a valid Claim Form

---

[5] *See also Faught v. Am. Home Shield Corp.,* No. 07-cv-1928, 2010 WL 10959223, at *21 (N.D. Ala. Apr. 27, 2010) (fact that "negotiations were supervised by a highly experienced mediator" evidenced arms-length nature of class settlement), *aff'd*, 688 F.3d 1233 (11th Cir. 2011).

are eligible to receive up to $2,000 per ticket, inclusive of up to $300 of travel costs. Therefore, if a Denied Entry Class Member purchased a ticket for $1,500 and a flight for $350, the Denied Entry Class Member will receive $1,800 (the ticket price and $300 of the $350 in travel costs), which is 97.3% of their Out-of-Pocket Ticket Costs and Our-of-Pocket Travel Costs. Because the Denied Entry Class Members are receiving this relief now instead of 5 years from now after arbitration, trial and/or appeals, the relief is more than adequate. For many Denied Entry Class Members, the relief provided under this Settlement now is far superior to what they could have recovered at trial.

Similarly, the Denied Full Access Class Members will be entitled to up to $100 per person to compensate them for being denied full access to stadium facilities. For example, a family of four who were able to access the Stadium for the Final Match will be eligible to receive up to $400 because they attest they did not have full use of the Stadium or amenities. While a jury may have found the damages of each Denied Full Access Class to be higher than $100 per person, it could also find the value to be lower or even zero. Regardless, the benefit of receiving such compensation now greatly increases its value.

**a. The costs, risks, and delay of trial and appeal.**

Significant legal hurdles remain in the case absent the Settlement. First, the Court has not ruled on arbitration, which could result in each individual having to pursue individual claims outside of court. Second, Plaintiffs asserted somewhat novel claims in alleging negligence, with the measure of damages for the Denied Entry Class being the amount paid for the ticket to the Final Match. It is unclear whether this legal theory would have been successful. Third, extensive discovery and expert discovery would have been required to determine whether the Defendants were negligent in their exercise of any alleged duty to provide security.

Further, Defendants' ticketing terms and conditions purported to limit the value of any

recovery to the "face value"[6] of each ticket. Absent this Settlement, there is a risk that individuals' recoverable damages could have been far less than what individuals paid out-of-pocket.

Additionally, the risks involved with delay in resolution potentially could mean years of waiting. Notably, this case involves thousands of international football fans. If the case were delayed for appeals as to arbitration and class certification, trial would likely have been more than five years down the road and the likelihood of locating Class Members and distributing relief to them successfully would likely be much lower. In addition, class certification, summary judgment, and a potential appeal of any Rule 23 certification decision and/or a merits decision also contains a substantial level of risk and potentially years of delay. These factors therefore weigh heavily in favor of approval of this Settlement.

**b. The effectiveness of any proposed method of distributing relief to the classes, including the method of processing Class Member claims.**

Distributing the settlement proceeds through a claim process which allows for submission of the total price paid for each ticket and allows for submission of actual travel costs is the most fair and appropriate way to distribute the benefits of the Settlement to the Denied Entry Class. Giving everyone in the Denied Entry Class the same amount when many paid different prices and each incurred different travel costs would have been a windfall for some while a loss for others. The claim process negotiated by the Parties is fair and appropriate under these circumstances.

Considering each of these factors, the proposed Settlement should be approved.

**c. The terms of any proposed award of attorneys' fees, including timing of payment.**

When a representative party has conferred a substantial benefit upon a class, class counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *In re Checking*

---

[6] Defendants also contend that the terms and conditions waive liability for Plaintiffs' claims.

*Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) (citing *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.")).

The Eleventh Circuit has stated that "the majority of fees in these cases are reasonable where they fall between 20–25% of the claims." *Id.* The 25% "benchmark" is so well ingrained in class settlement jurisprudence that only "[w]here the requested fee exceeds 25%, the court is instructed to apply the twelve Johnson factors." *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011).

Here, Plaintiffs' requested attorneys' fee of $3.5 million is equal to 25% of the value of the Settlement Fund. This matches the 25% "benchmark" for attorneys' fees approved in the Eleventh Circuit. *Camden I,* 946 F.2d at 774; *Bluetooth Headset*, 654 F.3d 935, 943 (9th Cir. 2011) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). Prior to Final Approval, Class Counsel will submit a separate Motion for Final Approval of Attorneys' Fees and Costs, which will also address any objections raised.

**d. Any agreement required to be identified under Rule 23(e)(3).**

The final factor for determined fairness under Rule 23(e)(3) reads:

> (1) Identifying Agreements. The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

It is widely understood that this section seeks disclosure of any and all side agreements or details that may not be clearly set forth in the settlement. Here, there are no additional agreements that are not clearly disclosed in the settlement.

**4. The proposal treats Class Members equitably relative to one another.**

The final fairness factor to be considered under amended Rule 23(e)(2) asks whether the

proposed settlement treats class members equitably relative to one another. The purpose of this factor is to make certain that the settlement does not favor some class members at the expense of others. As discussed above, the forms of relief to the Denied Entry Class and the Denied Full Access Class are meant to compensate for the varying degrees of harm suffered by each class, namely being denied entry to the Final Match entirely, or being admitted, but denied full access.

The claims process for each Class Member is similar whether they are a member of the Denied Entry Class or the Denied Full Access Class. Because there is no disparity between the process applied to the Class Members, this final factor also weighs in favor of this Court finding that the proposed settlement is fair, adequate and reasonable, such that the Court is "likely to approve the proposal under Rule 23(e)(2)."

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS

The Court should also approve the Parties' Class Notice Program. "The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required." *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373, 1380, n.6 (M.D. Ga. 2006), *aff'd*, 493 F.3d 1276 (11th Cir. 2007); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

The threshold inquiry concerning the sufficiency of class notice is whether the notice is reasonably calculated to apprise the class of the pendency of the action, of the terms of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Notice of a class settlement ensures that the due process rights of class members are protected. *See, e.g.*, *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176-77 (5th Cir. 1975).

Accordingly, a court should ensure that "the best notice that is practicable under the circumstances" is disseminated "in a reasonable manner to all class members who would be bound by the proposal," including through "individual notice to all [class] members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B), (e)(1).

**a. Administration and Claims Submission.**

The Notice Plan is explained in the declaration attached to the Settlement Agreement as Ex. E. To make a Claim under the terms of the Settlement Agreement, Class Members must submit, during the Claim Period, a Claim Form substantially similar to the Claim Form attached hereto as Exhibit 2, Settlement Agreement, Ex. A.[7] Claimants will be limited to one Claim Form per household, meaning that a family of four will submit one claim form and not separate claim forms for each ticket. All Claimants will be required to execute the Claim Form providing the names of each person for whom they purchased tickets and Valid Proof of Purchase and affirming that they (i) made the claimed purchases of tickets to the Final Match; and (ii) did not sell the tickets for which they are submitting a claim. Each Claim Form will allow a Claimant to identify membership in the Denied Entry Class or the Denied Full Access Class. Each Class Member who submits a Claim Form must sign the Claim Form under penalty of perjury and submit to the jurisdiction of the Court for purposes thereof.

The Class Notice will be sent electronically to the email address affiliated with the Claimant's Ticketmaster account, as all ticketholders had to create or log into their Ticketmaster account in order to accept their tickets. The Class Notice will also be sent by U.S. Mail to the

[7] For purposes of submission to the Court, the Claim Form is in PDF format. The same information will be available through the website and the Administrator will use a convenient online process as the primary method for claims submission, even if a paper form is made available.

Claimant's physical address where available. Defendants will provide Class Member emails and available physical addresses to the Settlement Administrator.

**1. Denied Entry Class Member-Specific Claim Submissions.**

One of the difficulties in this case is identifying who meets the definition of a Denied Entry Class Member. While Defendants can determine which tickets were and were not scanned upon entry to the stadium, the rush on the stadium gates by unticketed individuals caused ticketed persons to also obtain access to the stadium without having their tickets scanned. Thus, an unscanned ticket does not mean an individual is a member of the Denied Entry Class. But because there are cameras throughout the stadium, technology may be used to confirm whether a Class Member entered the stadium. Considering the amount of relief afforded to each Denied Entry Class Member, the Parties have sought to identify the class through the execution of a Claim Form attesting that the Denied Entry Class Member was denied access to the stadium and providing a Time-Stamped Photo.[8] In the alternative, Denied Entry Class Members may submit a Photo ID.

Each Claimant in the Denied Entry Class will also be required to affirm, under penalty of perjury, on the Claim Form that (i) they and the people for whom they purchased tickets were unable to enter the Stadium for the Final Match; (ii) that they have not previously received a refund of any portion of the Out-of-Pocket Funds claimed; and (iii) they are entitled to all Out-of-Pocket Funds claimed and no other Person is entitled to all or any portion of the claimed Out-of-Pocket Funds. Members of the Denied Entry Class who seek reimbursement of Out-of-Pocket Travel Costs will also be required to (i) itemize their claimed Out-of-Pocket Travel Costs, up to the $300 per person limit; (ii) identify any ticketholders on whose behalf they incurred the claimed Out-of-

[8] Claimants will be cautioned not to include minor children in any submitted Time-Stamped Photo.

Pocket Travel Costs and whether the services for any of the claimed Out-of-Pocket Travel Costs were in one of those ticketholder's names (*e.g.*, a hotel reservation under the name of a ticketholder other than Claimant); and (iii) provide Valid Proof of Out-of-Pocket Travel Costs, to the extent they are seeking such sums. These steps have been deemed necessary by the Parties to reduce the filing of fraudulent claims.

Each Claimant in the Denied Full Access Class will also be required to attest on the Claim Form that they were denied full access to Hard Rock Stadium facilities (*e.g.*, access to merchandise, concessions, specific seats purchased) during the Final Match.

**b. Settlement Administrator.**

The Parties have selected Angeion Group ("Angeion") as the Settlement Administrator. Angeion will be responsible for sending CAFA Notices, executing the Class Notice Program, evaluating the completeness, timeliness, and validity of Claims, and issuing payments to Class Members. The administration costs for this complex international administration are expected to be approximately $400,000, to be paid from the Settlement Fund. Exhibit 2, Settlement Agreement, Ex. E.

**c. The Proposed Notice Plan Satisfies Rule 23.**

The proposed Class Notice and Class Notice Program will be delivered electronically by email and U.S. Mail where physical addresses are available at the contact information associated with the Class Member's Ticketmaster account. Exhibit 2, Settlement Agreement, Exs. B and C. In addition, a long-form notice will be available on the settlement website. Exhibit 2, Settlement Agreement, Ex. D. The proposed Class Notice informs the Settlement Class Members of the nature of the pending action and the general terms of the proposed Settlement. The Class Notice also provides the settlement website information where Class Members can obtain additional

information about the case including a copy of the Second Amended Complaint, Settlement Agreement, Class Notice and Claim Form. The Class Notice also provides details on how and when to opt out or object to the proposed Settlement. At bottom, the proposed Class Notice provides Settlement Class Members with sufficient information and time to make an informed and intelligent decision about joining or opting out of the Settlement Class. The proposed Class Notice satisfies the requirements of Rule 23 and due process. Accordingly, the Court should approve the form and content of the Class Notice proposed by the Settlement Agreement.

## VI. CONCLUSION

Based on all of the foregoing, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) find that the Parties have shown that the Court will likely approve the Settlement under Federal Rule 23(e)(2) and preliminarily certify the Settlement Classes for purposes of judgment in accordance with the Settlement, such that giving of notice to all Settlement Class Members who would be bound by the Settlement is justified; (3) appoint Angeion Group as the Settlement Administrator; (4) approve the proposed Class Notice Program to the Settlement Classes and direct that Class Notice be provided to the Settlement Classes in accordance with the Class Notice Program; (5) set an Opt-Out and Objection Date; (6) set a Claim Deadline Date; (7) preliminarily enjoin all Settlement Class Members from commencing, prosecuting, intervening in, or participating as a plaintiff or class member in any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims against any of the Released Parties; (8) stay all proceedings in this civil action, including Defendants' deadline to respond to the Second Amended Complaint, except those related to approval and effectuation of the Settlement Agreement; (9) approve the proposed schedule for disseminating notice to the Class Members; and (10) schedule a hearing pursuant to Federal Rule of Civil Procedure 23(e) to finally determine whether the proposed Settlement is fair, reasonable,

and adequate, and that the elements for certification under Rule 23(a) and (b) are satisfied.

Pursuant to the terms of the proposed Settlement, the Parties have provided a draft Preliminary Approval Order for the Court's convenience and Plaintiffs request entry of that Order or one substantially similar. See Exhibit 1.

Dated: November 24, 2025

**VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome, II
Jeffrey L. Newsome, II; FBN: 1018667
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
Pamela G. Levinson, FBN: 538345
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jnewsome@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*plevinson@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Attorneys for Plaintiff, and on behalf of all others similarly situate***