**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION**

**Case No. 1:24-cv-22751-BLOOM/Elfenbein**

DAS NOBEL, EDUARDO MARTINEZ, DANIEL GRANDE, WILLIAM POU, DAVID ZIEMEK and JOSEPH ABADI, on behalf of themselves and on behalf of all others similarly situated,

Plaintiffs,

vs.

SOUTH FLORIDA STADIUM LLC d/b/a HARD ROCK STADIUM; CONFEDERACIÓN SUDAMERICANA DE FÚTBOL d/b/a CONMEBOL, CONFEDERATION OF NORTH, CENTRAL AMERICA AND CARIBBEAN ASSOCIATION FOOTBALL d/b/a CONCACAF, and BEST CROWD MANAGEMENT, INC.,

Defendants.

_________________________________________/

# PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION AND PROCEDURAL POSTURE ..... 2

II. THE SETTLEMENT TERMS ..... 5

A. Proposed Settlement Class ..... 5

B. Settlement Relief ..... 5

a) The Denied Entry Class ..... 5

b) The Denied Full Access Class ..... 6

c) Attorneys' Fees and Costs and Class Representative Service Awards ..... 6

d) Notice and Administrative Costs ..... 6

III. CLASS NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS ..... 7

A. Class Notice Program ..... 7

B. Claims Submissions ..... 8

C. Opt-Outs and Objections ..... 8

IV. ARGUMENT ..... 10

A. The Settlement Classes Should be Certified, and the Appointments of Class Representatives, Lead Counsel, Class Counsel, and the Settlement Administrator Should Be Affirmed. ..... 10

B. The Settlement Should be Finally Approved ..... 12

a) Adequacy of Representation (Rule 23(e)(2)(A)) ..... 13

b) The Settlement Was Negotiated at Arm's Length (23(e)(2)(B)) ..... 14

c) The Adequacy of Settlement Relief (Rule 23(e)(2)(C)) ..... 15

d) The Equitable Treatment of Class Members (Rule 23(e)(2)(D)) ......................17

e) Opinions of Class Counsel, Plaintiffs, and Absent Class Members Favor Approval of the Settlement ......................18

f) Agreements Identified (Rule 23(e)(3)) ......................18

C. Notice Was Adequate and Satisfies Due Process Requirements ......................19

V. CONCLUSION ......................20

# TABLE OF AUTHORITIES


Cases Pg(s)

*Ass'n for Disabled Americans v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ........ 18

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) ........ 16

*Borcea v. Carnival Corp.*,
238 F.R.D. 664 (S.D. Fla. 2006) ........ 14

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ........ 16

*Ferron v. Kraft Heinz Foods Co.*,
No. 20-CV-62136-RAR, 2021 WL 2940240 (S.D. Fla. July 13, 2021) ........ 18

*Francisco v. Numismatic Guar. Corp. of Am.*,
No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ........ 13

*In re Checking Account Overdraft Lit.*,
830 F. Supp. 2d 1330 (S.D.Fla.2011) ........ 16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ........ 15

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ........ 12

*Lee v. Ocwen Loan Servicing, LLC*,
No. 14-CV-60649, 2015 WL 5449813 (S.D. Fla. Sep. 14, 2015) ........ 12

*Lipuma v. American Express Co.*,
406 F. Supp. 2d 1298 (S.D. Fla. 2005) ........ 14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ........ 19

*Petersen v. Am. Gen. Life Ins. Co.*,
3:14-CV-100-J-39JBT, 2019 WL 11093816 (M.D. Fla. Oct. 22, 2019) ........ 13

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ... 15

*Smith v. Wm. Wrigley Jr. Co.*,
No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010) ... 12

**Statutes**

28 U.S.C. § 1715 ... 7

Rules

Fed. R. Civ. P. 23 ... 1, 19

Fed. R. Civ. P. 23(a) and 23(b)(3); (3) ... 20

Fed. R. Civ. P. 23(a) and (b)(3) ... 10

Fed. R. Civ. P. 23(a)(4) ... 10

Fed. R. Civ. P. 23(c)(2)(B) ... 19

Fed. R. Civ. P. 23(e) ... 10

Fed. R. Civ. P. 23(e)(2) ... 12, 13, 18

Fed. R. Civ. P. 23(g)(1)(B) ... 11

Federal Rule of Civil Procedure 23(g)(1)(A) ... 11

Rule 23(e)(1) ... 12

Rule 23(e)(2)(A) ... 13

Rule 23(e)(2)(C) ... 15, 16

Rule 23(e)(2)(D) ... 17

Rule 23(e)(3) ... 13, 18

Rule 23(h)(1) ... 20

Pursuant to Fed. R. Civ. P. 23, Plaintiffs, Das Nobel, Eduardo Martinez, Daniel Grande, William Pou, David Ziemek (together, "Denied Entry Plaintiffs" or "Nobel"; "Martinez"; "Grande"; "Pou"; and "Ziemek"), and Joseph Abadi ("Denied Full Access Plaintiff" or "Abadi") (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated (the "Class" or "Class Members"), respectfully submit this Unopposed Motion for Final Approval of the Settlement Agreement [Dkt. 178-2] and, separately, Plaintiffs also filed their Application for Attorneys' Fees and Costs and Class Representative Awards [Dkt. 183], which the Defendants took no position on. This Motion is supported by the Declarations of Lead Class Counsel ("Lead Class Counsel Decl.") and Class Counsel ("Class Counsel Decl."), attached as **Exhibit A** and **Composite Exhibit B** respectively, and the Declaration of the Settlement Administrator Regarding Implementation and Adequacy of Class Notice Program ("Admin. Decl."), attached as **Exhibit C**.

On November 25, 2025, this Court preliminarily approved the Settlement, which provides significant financial relief totaling a maximum of $14 million to ticketholders who attended the Copa America Final Match (the "Final Match"). [Dkt. 182]. Upon final approval, the settlement fund will be used to pay financial relief of up to $2,000 per ticket for each Denied Entry Class Member Approved Claim and $100 per ticket for each Denied Full Access Class Member Approved Claim, Notice and Administrative Costs, Attorneys' Fees and Costs and Service Awards.

Consistent with the Class Notice Program approved by this Court, Class Notice has been issued to all Settlement Class Members. Admin Decl., ¶¶ 9–14. As of the March 25,

2026 Opt-Out and Objection Date, there are 27 Class Members who have submitted Valid Exclusion Statements and only one 1 class member, a Denied Full Access Class Member, has filed an objection. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate.

Lead Class Counsel and Class Counsel have fully evaluated the strengths, weaknesses, and equities of the Parties' respective positions and believe the proposed Settlement fairly resolves their respective differences. For all the reasons set forth herein, the Court should grant final approval of the Settlement including Class Counsel's petition for attorneys' fees and costs and the requested Service Awards.

## I. INTRODUCTION AND PROCEDURAL POSTURE

This case concerns significant financial relief totaling a maximum of $14 million, being provided to ticketholders to the Copa America Final Match (the "Final Match"), which took place at Hard Rock Stadium on July 14, 2024.

This case, *Das Nobel, et al. v. South Florida Stadiums, LLC et al.,* Case No.: 1:24-cv-22751 ("Nobel Action"), was one of five class actions filed arising out of the attempts by unruly fans without tickets to gain entry to the Final Match. Plaintiff Nobel filed the first federal class action complaint in this Court on July 19, 2024, only five days after the Final Match (the "Nobel Action"). [Dkt. 1]. In addition, the following class actions were filed after the Nobel Action (together with the Nobel Action, the "Copa America Class Action Cases"):

- *Pou v. CONMEBOL, et al.*, Case No. 1:24-cv-22828-BB;
- *Valderrama, et al. v. CONMEBOL, et al.,* Case No. 1:24-cv-22772-BB;

- *Manco v. South Florida Stadium LLC,* Case No. 1:24-cv-23195-BB; and
- *Martinez v. South Florida Stadium LLC,* Case No. 1:24-cv-23324-RAR

By agreement of Plaintiffs' counsel among these "Copa America Class Action Cases," all of the Copa America Class Action Cases were either consolidated within the Nobel Action or dismissed without prejudice. Therefore, the Nobel Action became the lead class action related to the Final Match, and Varnell & Warwick, P.A. agreed to serve as lead counsel.[1]

The Nobel Action initially alleged one count of negligence and one count of unjust enrichment against Defendants, South Florida Stadium LLC d/b/a Hard Rock Stadium ("Hard Rock"), Confederacion Sudamericana De Futbol d/b/a CONMEBOL ("CONMEBOL"), Confederation of North, Central America and Caribbean Association Football d/b/a Concacaf ("Concacaf"), and BEST Crowd Management, Inc. ("BEST"). [Dkt. 1].

The First Amended Consolidated Complaint alleged two counts of negligence and one count of unjust enrichment and added Plaintiffs Martinez, Grande, Pou, and Ziemek and Defendants, the Miami Dolphins Ltd. (the "Dolphins"), County Line South Properties, LLC ("CLS Properties"), Dolphin Center Properties, LLC ("DC Properties"). [Dkt. 83].

---

[1] In one additional putative class action case relating to the Final Match, *Kattia Garn v. South Florida*, Case. No. 24-25087-CV-WILLIAMS, SFS and CONCACAF have appealed to the Eleventh Circuit the district court's order denying their motion to compel arbitration. Given Ms. Garn's unilateral decision to participate in the settlement in *Nobel* and corresponding decision to ask the court to voluntarily dismiss her case without prejudice so that she can participate in the settlement in *Nobel*, however, SFS and CONCACAF recently filed an unopposed motion for an indicative ruling. *See Garn*, Dkt. 78. In that motion submitted to Judge Williams, SFS and CONCACAF ask the court to issue an indicative ruling stating that upon remand from the Eleventh Circuit, the court would vacate its order currently on appeal and dismiss Ms. Garn's case without prejudice in order to facilitate Ms. Garn's decision to participate in the settlement in *Nobel*.

The Complaint and First Amended Consolidated Complaint alleged a single class, defined as all persons who had a ticket to the Final Match and were denied entry to Hard Rock Stadium (the "Denied Entry Class"). [Dkts. 1, p 18; 83, p. 33].

The Second Amended Complaint added Plaintiff Abadi and added an additional class consisting of all ticketholders who were admitted to the Final Match but were denied full access and enjoyment of Hard Rock Stadium, including concessions and merchandise due to the closures caused by the attempts by unruly fans without tickets to gain entrance to the Final Match. (the "Denied Full Access Class"). [Dkt. 171, pp. 32-35].

In the Nobel Action, Plaintiffs and Defendant SFS fully briefed Plaintiffs' Emergency Motion to Limit Class Member communications [Dkts. 10, 20, 30, 35], upon which the Court issued a Report and Recommendation finding that the Motion should be granted. [Dkt. 142]. The Parties also briefed the Motion to Stay [Dkts. 118, 121]; Motions to Dismiss [Dkts. 114, 119, 133, 135, 146]; Motions to Dismiss and in the alternative to Stay [Dkts. 115, 146, 147]; and Motions to Compel Arbitration [Dkts. 113, 117, 131, 132, 134, 136, 137] or otherwise joined in the Motions or sought a stay of deadlines to respond.

The Parties voluntarily mediated this matter before this Court ruled on any of the above pending motions. On November, 24, 2025, Plaintiffs filed their Unopposed Motion for Preliminary Approval [Dkt. 178], which sought approval of the Settlement Agreement [Dkt. 178-2]. The Court granted preliminary approval on November 25, 2025. [Dkt. 182]. The Class Notice Program has been completed in compliance with the Settlement Agreement and the Preliminary Approval Order and the claim process is ongoing. Admin Decl., ¶¶ 9–20. The Settlement is now ripe for final approval.

## II. THE SETTLEMENT TERMS

On November 17, 2025, the Parties executed the Settlement Agreement for which Plaintiffs now seek final approval from this Court. [Dkt. 178-2].

### A. Proposed Settlement Class

The Settlement includes two distinct Classes. First, the Denied Entry Class (the "Denied Entry Class") is defined as:

> **Denied Entry Class:** All ticketholders to the Copa America Final Match who were denied entry to Hard Rock Stadium.

(Settlement Agreement, p. 24).

Second, the Denied Full Access Class (the "Denied Full Access Class") is defined as:

> **Denied Full Access Class:** All ticketholders to the Copa America Final Match who were admitted to Hard Rock Stadium, but were denied full access to and enjoyment of Hard Rock Stadium facilities or to specific seats purchased.

(*Id.*)

### B. Settlement Relief

Pursuant to the Settlement, Defendants agreed to collectively pay a maximum amount of $14 Million which will be allocated as follows. (*Id.*, p. 26–27).

#### ***a) The Denied Entry Class***

All Denied Entry Class Members who timely submit a valid, Approved Claim eligible to recover Out-of-Pocket Ticket Costs, up to but not to exceed $2,000 per ticket. (*Id.*, pp. 28–29). Denied Entry Class Members who timely submit a valid Claim Form will each be eligible to receive up to $300 in Out-of-Pocket Travel Costs. (*Id.*). The maximum

amount that each Denied Entry Class Member is eligible to receive is $2,000 per ticket inclusive of both Out-of-Pocket Ticket Costs and Out-of-Pocket Travel Costs.

***b) The Denied Full Access Class***

Denied Full Access Class Members who timely submit a valid, Approved Claim will be eligible to recover up to $100 per ticket. (The Denied Entry Class and Denied Full Access Class will be referred to herein as "the Classes".)

***c) Attorneys' Fees and Costs and Class Representative Service Awards***

Plaintiffs submitted their petition for attorneys' fees and costs and class representative awards. [Dkt. 183]. The petition for attorneys' fees and costs and class representative awards was available on the Court's docket, the Settlement Website, and the amounts sought were disclosed in the email and mail notice to the Class. No Class Members have objected to the amounts sought for Attorneys' Fees and Costs and Class Representative Service Awards. Lead Class Counsel Decl., ¶ 8.

***d) Notice and Administrative Costs***

To date, the Settlement Administrator has invoiced and been paid $21,018.00. Admin. Decl., ¶ 21. The Settlement Administrator expects to incur a total of $352,000 in Notice and Administrative Costs for sending notice, vetting the claims submission for completeness, and issuing Cash Awards. *Id.*

## III. CLASS NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OBJECTIONS

### A. Class Notice Program

Pursuant to the Settlement and this Court's Preliminary Approval Order, the Settlement Administrator issued the CAFA Notices required by 28 U.S.C. § 1715. Admin. Decl. ¶ 5. Following receipt of the Class List, the Settlement Administrator implemented the Class Notice Program, which consisted of sending the Class Notice by email and/or U.S. mail to all Class Members, depending upon the type of information available from the Class List, and a long form Class Notice was made (and remains) available on the Settlement Website. The Class Notice clearly and concisely summarized the Settlement and the legal rights of the Class Members and directed Class Members to visit the Settlement Website for additional information. *Id.*, ¶¶ 8–15. In total 35,553 email notices were sent and 16,502 mail notices were sent to the 35,921 Class Members, meaning more than half of the Class Members received at least two forms of notice. *Id.*, ¶¶ 8–13. Between mail and email, the Notice Plan achieved a reach rate of 88% amongst the Class Members. *Id.*, ¶ 13.

On January 24, 2025, the Settlement Administrator established the Settlement Website for Class Members to obtain detailed information about the Nobel Action and review important documents, including the Complaint, Class Notice, Settlement Agreement, Claim Form, Motion for Preliminary Approval, and Preliminary Approval Order. *Id.*, ¶ 15. This Motion for Final Approval will also be posted upon filing. The Settlement Website also includes relevant dates, answers to frequently asked questions, opt-out and objection instructions, contact information for the Settlement Administrator,

and how to obtain other case-related information. *Id.* There have been 26,443 page views to the Settlement Website. *Id.*

**B. Claims Submissions**

The Class Notice Program is explained in the Settlement Administrator's declaration attached to the Settlement Agreement as Exhibit C. To make a valid Claim under the terms of the Settlement Agreement, Class Members must timely submit, during the Claim Period, a completed Claim Form. Settlement Agreement, Ex. A.[2] Claimants are limited to one Claim Form per household, meaning that a family of four is to submit one Claim Form and not separate claim forms for each ticket.

As of March 17, 2026, 116 claims have already been submitted. Admin. Decl. ¶ 16. The Claims submitted before final approval demonstrate that the Class Notice Program has been effective to date and understood by the Class Members. Lead Class Counsel Decl., ¶ 7. Class Members will have until August 11, 2026 to submit their Claims.

**C. Opt-Outs and Objections**

By the Opt-Out and Objection Date, the Settlement Administrator received 34 Valid Exclusion Statements/Opt-Outs and 1 objection (the "Objection") has been filed with the Court. Admin. Decl. ¶¶ 17–18 ; [Dkt. 184]. The Opt-Out and Objection Date is the date of

[2] The same information is be available through the Settlement Website and the Settlement Administrator used a convenient online process as the primary method for claims submission, even if a paper form is made available.

this filing, March 25, 2026. Plaintiffs will update the Court ahead of the final approval hearing if any additional opt-out requests or objections are received.

The lone Objection, filed by Mr. Oscar Buendia (who represents he is a Denied Full Access Class Member), asserts several grounds for objection. Objection, pp. 3–4. Plaintiffs will respond in full to the Objection by the deadline of May 6, 2026. However, the basis of the Objection warrants limited discussion in this Motion. Primarily, Mr. Buendia argues that the Settlement provides inadequate compensation and that the release is too broad. However, Mr. Buendia misunderstands the Settlement and the claims being released.

First, the allegations in this case centered on ticket value and allegations that class members did not receive the full value of their ticket purchases. Settlement Agreement, p. 12–13 (limiting the "Released Claims" definition to "relating to the purchase and/or use of tickets to the Final Match"). The Objection simply misunderstands the nature of the Nobel Action, what claims were alleged, and what claims are being released.

The second problem with the Objection is that it fails to comprehend that the emotional distress type injuries that it describes are not recoverable under Florida law absent some form of physical injury. Because claims involving physical injury would vary by class member, Plaintiffs did not bring such claims in the Litigation.

Critically, the Objection does not contend that the recoverable amounts offered are insufficient to cover the claims that are involved in the case and being released – the price of the tickets and travel costs. And while the Objection asserts that, in Mr. Buendia's

opinion, the Settlement does not do enough to hold Defendants accountable, the terms of this Settlement prove otherwise. Accordingly, this Court should overrule the Objection.

## IV. ARGUMENT

### A. The Settlement Classes Should be Certified, and the Appointments of Class Representatives, Lead Counsel, Class Counsel, and the Settlement Administrator Should Be Affirmed.

The Motion for Preliminary Approval detailed the basis for certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). [Dkt. 178]. In compliance with Fed. R. Civ. P. 23(e), the Court's Preliminary Approval Order details its findings for why it would be likely to certify the Settlement Class at the Final Approval stage, finding the following requirements were all met: standing, ascertainability, numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. [Dkt. 182, pp. 4–10]. Nothing has changed since Preliminary Approval was granted and the Settlement Class was provisionally certified to warrant not entering final approval of the Settlement. Therefore, for brevity's sake, Plaintiffs do not repeat their arguments in support of final Settlement Class certification and instead incorporate by reference their arguments from the Motion for Preliminary Approval. [Dkt. 178].

Named Plaintiffs' appointments as the Class Representatives should be affirmed as Named Plaintiffs remain adequate representatives. [Dkt. 182, p. 4]. For the same reasons the Court found them adequate under Fed. R. Civ. P. 23(a)(4), the Court should also affirm the designation of Jeffrey L. Newsome, II, Brian Warwick, and Janet Varnell, of Varnell & Warwick, P.A. (located at 400 N Ashley Drive, Suite 1900, Tampa, FL 33602) as Lead

Class Counsel and as Class Counsel: Pamela G. Levinson, Christopher J. Brochu of Varnell & Warick, PA (located at 400 N Ashley Drive, Suite 1900, Tampa, FL 33602); Eduardo A. Maura, Luis F. QuesadaMachado, Ryan M. Sawal and Orestes D. Garcia of Ayala Law, P.A. (located at 2490 Coral Way, Suite 401, Miami, Florida 33145); Manuel S. Hiraldo of Hiraldo P.A. (located at 401 E. Las Olas Boulevard, Suite 1400, Ft. Lauderdale, Florida 33301); Fletcher Moore of Moore Law, PLLC (located at 30 Wall Street, 8th Floor, New York, New York 10005); Lee Squitieri of Squitieri & Fearon LLP (located at 305 Broadway, 7th Floor, New York, New York 10007); and Jonathan Lee Borsuk of Jonathan Lee Borsuk PC (located at 2121 Avenue of the Stars, Eighth Floor, Los Angeles, CA 90067). [*Id.*, pp. 4–5].

Federal Rule of Civil Procedure 23(g)(1)(A)'s four factors for appointing class counsel for a certified class are (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). Here, as the Court has observed, Class Counsel are qualified and competent leaders in class actions with extensive experience prosecuting and resolving complex class actions. [Dkt. 178-4 ¶¶ 1–16]; Class Counsel Decl. ¶¶ 1–4. Lead Class Counsel and Class Counsel has devoted substantial time and resources to this Litigation

and will continue to do so. [Dkt. 183-1, ¶¶ 4–17]; Lead Class Counsel Decl., ¶ 5, Class Counsel Decl. ¶¶ 3, 5.

Finally, the Court should appoint Angeion to continue to act as the Settlement Administrator and to accept Claim Forms and to issue corresponding Cash Awards.

**B. The Settlement Should be Finally Approved.**

In the Preliminary Approval Order the Court found that the Settlement appeared to be fair, adequate, and reasonable under Fed. R. Civ. P. 23(e)(2). [Dkt. 182, p. 2]. Now, the Court should grant Final Approval considering those same factors, being able to now judge the Class Members' positive reaction to the Settlement with only 1 objection and 27 Opt-Outs following dissemination of approximately 35,000 Class Notices.

The Eleventh Circuit recognizes the strong public and judicial policy favoring the pretrial settlement of class-action lawsuits. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813 *4 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149 at *3 (S.D. Fla. June 15, 2010) (citation omitted).

The Settlement is clearly within the range of reasonableness, and it satisfies all standards for Final Approval, including Plaintiffs' obligations under Rule 23(e)(1). This Court should "[focus] on the primary procedural considerations and substantive qualities

that should always matter to the decision to approve the proposal. See Fe. R. Civ. P. 23(e), Committee Notes on the Rules—2018 Amendment. The Rule 23(e)(2) factors are:

> (A) the class representatives and class counsel adequately represented the class;
> (B) the proposal was negotiated at arms' length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Final approval is warranted here under the applicable factors.

***a) Adequacy of Representation (Rule 23(e)(2)(A))***

In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]" Petersen v. Am. Gen. Life Ins. Co., 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *5 (M.D. Fla. Oct. 22, 2019) (footnote and additional citation omitted); *see also Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient

information to adequately evaluate the merits of the case and weigh the benefits against further litigation.”).

Courts consider the stage of proceedings at which a settlement is achieved “to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation.” *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). Here, as detailed above, the Settlement was reached after contested litigation, briefing, exchange of confidential class information, and extensive negotiations lasting months. The claims advanced were evaluated by experienced counsel. Thus, Lead Class Counsel and Class Counsel are well-positioned to evaluate Class Members’ claims strengths, Defendants’ defenses, and prospects for success.

***b) The Settlement Was Negotiated at Arm’s Length (23(e)(2)(B))***

“A proposed settlement action should be approved as long as it is ‘fair, adequate and reasonable and it is not the product of collusion between the parties.’” *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 672 (S.D. Fla. 2006); *see also Lipuma*, 406 F. Supp. 2d at 1318-19 (settlement approved where “benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel”). Here, the Settlement is the result of extensive, arm’s-length negotiations between experienced attorneys with the help of an experienced mediator familiar with class action

litigation and with the legal and factual issues at the center of this Litigation. [Dkt. 183-1, ¶¶ 11–15].

Lead Class Counsel are particularly experienced in this type of litigation, certification, trial, and settlement of class action cases. [Dkts. 178-3, 178-4]. This experience proved beneficial to Plaintiffs and the Settlement Class during Settlement negotiations. Lead Class Counsel and Class Counsel conducted significant investigation before mediation, enabling them to gain a complete understanding of the evidence related to central issues, including damages and liability, and prepare for well-informed settlement negotiations. *Id.* The negotiations that culminated in the Settlement were conducted over many months, were at arm's-length and extensive, and overseen by experienced mediator, Terrance White. [Dkt. 183-1, ¶¶ 11–15]; *see Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

There was no fraud or collusion in arriving at the Settlement. Thus, 23(e)(2)(B) is satisfied.

***c) The Adequacy of Settlement Relief (Rule 23(e)(2)(C))***

Lead Class Counsel and Class Counsel have significant class action experience and strongly believe the Settlement is fair, reasonable, and adequate. Lead Class Counsel Decl., ¶ 9; Class Counsel Decl., ¶¶ 5, 6, 9. The Court may rely upon the judgment of experienced counsel. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1274 (11th Cir. 2021) (trial judge "should be hesitant to substitute its own judgment for

that of counsel") (internal quotations omitted). Rule 23(e)(2)(C)'s factors also show the Settlement is fair, reasonable, and adequate.

In determining a settlement's fairness given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990); *see also In re Checking Account Overdraft Lit.*, 830 F. Supp. 2d 1330, 1346 (S.D.Fla.2011) (a recovery of between 9% and 45% was an "exemplary result"). When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Here, Defendants have agreed to create a Settlement Fund to pay most Denied Entry Class Members a complete refund of their Out-of-Pocket Ticket Costs and up to $300 in Out-of-Pocket Travel costs, for a maximum of $2,000 per ticket. [Dkt. 183-1, ¶ 23]. This is an exceptional result given the presence of arbitration provisions and the defenses available to Defendants and when considering the uncertainty of continued litigation. The Denied Entry Class relief is excellent in comparison to what could have been recovered at arbitration or trial.

The Denied Full Access Class Members may recover $100 per ticket for varying circumstances, ranging from not being able to sit in their purchased seat to not being able

to purchase a beverage or food from concessions. [*Id.*, ¶ 26]. When considering the defenses available to the Defendants to defeat certification of the Denied Full Access Class Members' claims, the relief is extraordinary. In fact, certification of this type of claim in an opposed setting may have been very difficult to obtain. Thus, this Settlement far exceeds **both** the reasonableness and adequacy bar for the Denied Full Access Class as well**.**

### *d) The Equitable Treatment of Class Members (Rule 23(e)(2)(D))*

As discussed in Section II, the Denied Entry Class Members are treated equitably compared to one another. They are all eligible for up to $2,000 per ticket, based on the price paid for the ticket(s) they purchased and the amount spent on travel (up to $300 per person). Although this claims process requires more Settlement Administrator labor to review the Proof of Purchase associated with the Claim Form, it ensures that Denied Entry Class Members receive relief commensurate with their Out-of-Pocket costs, up to the maximum threshold of $2,000. [Dkt 183-1, ¶ 22–26]. This is especially true where many class members purchased tickets from third parties at higher amounts but are still able to file claims and obtain significant refunds.

The Denied Full Access Class Members who submit a claim, on the other hand, receive a flat sum of $100 per ticket. For those that entered the stadium, although one person may not have had access to concessions and the other a conveniently located restroom, there is no efficient way to delineate the degree of inconvenience, and the flat

payment method of compensation is preferable and better suited to ensure equitable treatment.

***e) Opinions of Class Counsel, Plaintiffs, and Absent Class Members Favor Approval of the Settlement.***

Lead Class Counsel and Class Counsel endorse the Settlement. Lead Class Counsel Decl., ¶ 9; Class Counsel, Decl. ¶¶ 5, 6, 9. The Court should give "'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'" *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *12 (S.D. Fla. July 13, 2021) (citations omitted).

There have only been 27 Valid Exclusion Statements among over 35,000 Class Notice recipients and only one objection. Even when a timely objection is made, it is settled law that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Ass'n for Disabled Americans v. Amoco Oil Co*., 211 F.R.D. 457, 467 (S.D. Fla. 2002). This represents resounding approval of the Settlement by the absent Class Members. In addition, Named Plaintiffs signed the Settlement Agreement and approved of the terms. Settlement Agreement, pp. 69-75.

Thus, the Court should find the Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members as required by the Rule 23(e)(2).

***f) Agreements Identified (Rule 23(e)(3))***

Rule 23(e)(3) states "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are

no agreements other than those set forth in the Settlement Agreement itself or otherwise submitted to the Court.

### C. Notice Was Adequate and Satisfies Due Process Requirements

The Court-approved Class Notice Program carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. *See supra* at 6–10. Denied Entry and Denied Full Access Class Members received Class Notice of the settlement and had the opportunity to be heard and participate in the Litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The Court exercised its discretion to approve a reasonable Class Notice Program.

As the Court held when granting Preliminary Approval, the Class Notice sent directly to Settlement Class Members and the long form Class Notice was posted on the Settlement Website, which is the best notice practicable under the circumstances and constitutes due and sufficient notice to Settlement Class Members. [Dkt. 182, ¶ 13]. The best notice practicable is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Class Notice informed the Settlement Class Members of the nature of the pending action and the important terms of the proposed Settlement. The Class Notice also provided the Settlement Website information where Class Members can obtain additional information about the case including a copy of the Second Amended Complaint,

Settlement Agreement, Class Notice and Claim Form. The Class Notice also provided details on how and when to opt out or object to the proposed Settlement, which 28 Class Members understood and exercised. At bottom, the proposed Class Notice provided Settlement Class Members with sufficient information and time to make an informed and intelligent decision about joining or opting out of the Settlement Class.

Finally, the Class Notice Program satisfies the requirements of Rule 23(h)(1), as the Notices informed the Settlement Class that Class Counsel may apply for an award of Attorneys' Fees and Costs of up to twenty-five percent of the Settlement Fund. In addition, after the application for Attorneys' Fees and Costs and Service Awards was filed, it was made available on the Settlement Website prior to the Opt-Out and Objection Date. Admin Decl. ¶ 15.

## V. CONCLUSION

Plaintiffs and Class Counsel respectfully request this Court enter the Final Approval Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Classes for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3); (3) confirming the appointment of Plaintiffs as Class Representatives; Jeffrey L. Newsome, II, Brian W. Warwick, and Janet R. Varnell as Lead Counsel and as Class Counsel Pamela G. Levinson, Christopher J. Brochu, Eduardo A. Maura, Luis F. Quesada, Machado, Ryan M. Sawal and Orestes D. Garcia, Manuel S. Hiraldo, Fletcher Moore, Lee Squitieri, and Jonathan Lee Borsuk; and Angeion as Settlement Administrator for the Classes; (5) awarding Class Counsel $3,465,000 in attorneys' fees and $35,000 in litigation

costs; (6) approving payment of outstanding Notice and Administrative Costs; (7) overruling timely objections; (8) entering final judgment and dismissing the Litigation with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as **Exhibit D**.

Dated: March 25, 202

**VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome, II
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 605573
Jeffrey L. Newsome, II; FBN: 1018667
Christopher J. Brochu; FBN: 1013897
Pamela G. Levinson; FBN: 538345
Vanessa A. Buchko; FBN: 549754
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: 352-753-8600
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
jnewsome@vandwlaw.com
cbrochu@vandwlaw.com
plevinson@vandwlaw.com
vbuchko@vandwlaw.com
ckoerner@vandwlaw.com
jesquibel@vandwlaw.com
emcgowan@vandwlaw.com
service@vandwlaw.com

***Attorneys for Plaintiff, and on behalf of all others similarly situated***